UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

№ 04-CV-3765 (JFB) (KAM)

JUDITH BEYAR,

Plaintiff,

VERSUS

THE CITY OF NEW YORK,

Defendant.

MEMORANDUM AND ORDER
June 29, 2007

JOSEPH F. BIANCO, District Judge:

Plaintiff Judith Beyar filed the instant action against defendant the City of New York ("the City") alleging violations of her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*, and 42 U.S.C. §§ 1981 and 1983, as well as under New York State Executive Law § 296, that allegedly occurred during her employment at the New York City Fire Department ("FDNY").[1] The matter was tried before a jury from April 23, 2007 through May 2, 2007. The jury was presented with three claims under Title VII and New York State law: (1) gender based hostile work environment; (2) retaliation; and (3) constructive discharge. The jury returned a unanimous verdict for defendant on each of plaintiff's claims. On May 17, 2007, plaintiff timely filed the instant motion pursuant to Fed. R. Civ. P. 59(a) to set aside the verdict and for a new trial. Plaintiff requests relief on the following three grounds: (1) the verdict was against the weight of the evidence on plaintiff's hostile work environment claim; (2) defense counsel's conduct during closing argument tainted the jury with improper innuendo and improper remarks outside the scope of any evidence presented at trial; and (3) the charge to the jury was "too complex and complicated for the jury's understanding of the law." (Pl.'s Mem. at 4-5.) For the

---

[1] The complaint was originally filed against the New York City Fire Department. However, because the New York City Fire Department is a nonsuable entity, the caption was amended at trial to name the City of New York, the proper party in interest.

reasons that follow, plaintiff's motion to set aside the verdict and for a new trial is denied.

I. DISCUSSION

Rule 59(a) provides that a court may grant a new trial in a jury case for any of the reasons "for which new trials have heretofore been granted in the courts of the United States." Fed. R. Civ. P. 59(a). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (citations omitted). "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict. Moreover, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." *DLC Mgmt. Corp.*, 163 F.3d at 134 (citing *Song v. Ives Labs.*, 957 F.2d 1041, 1047 (2d Cir. 1992)). However, "[a] court considering a Rule 59 motion for a new trial must bear in mind . . . that the court should only grant such a motion when the jury's verdict is 'egregious.'" *DLC Mgmt. Corp.*, 163 F.3d at 134 (citation and quotations omitted). Thus, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998) (internal citation omitted)). Furthermore, "[w]here the resolution of the issues depended on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992); *see also DLC Mgmt. Corp.*, 163 F.3d at 134 ("[A] court should rarely disturb a jury's evaluation of a witness's credibility.").

A. The Verdict Was Not Against the Weight of the Evidence

Plaintiff's entire argument in support of her motion to set aside the verdict on the grounds that it was against the weight of the evidence requires an evaluation of witness testimony. In support of her motion, plaintiff refers the Court to trial testimony on the following alleged evidence in support of her claims: (1) denial of the 24-hour position, and the selection of a male firefighter over plaintiff for that position; (2) plaintiff's "dwindling" job duties; (3) a photograph with an inappropriate picture drawn on or below it that was hanging in the firehouse kitchen; (4) Chief Mosier's failure to attend the Women of Achievement Ceremony; (5) the erasure of plaintiff's name on scheduling sheets; (6) the testimony of Carol Schreiber, the only other female in the office, regarding her treatment by Chief Mosier; (7) the failure of the EEO process; (8) comments to plaintiff by Chief Pritchard; (9) the offering of the 24-hour position to plaintiff by Chief Mosier; and (10) the Treglia incident, whereby Mrs. Treglia and her daughter were asked to leave the firehouse. To find that all of these alleged incidents occurred, the jury would necessarily have credited plaintiff's testimony. Plaintiff acknowledges as much when she asserts in support of her motion that plaintiff "*credibly* testified to the following as evidence of a hostile work environment." (Pl.'s Mem. at 7 (emphasis added).) However, Chief Mosier, the source of most of the allegedly hostile conduct, also testified and provided his explanations for and versions of the various incidents. Therefore, to set aside the verdict, this Court would need to find that the jury improperly discredited plaintiff's testimony

and/or improperly credited Chief Mosier's testimony. That there was some testimony by other witnesses to corroborate certain of plaintiff's allegations of unlawful conduct does not change the analysis. As the Supreme Court has explained,

> It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable.

*Tennant v. Peoria & P. U. R. Co.*, 321 U.S. 29, 35 (1944); *see also Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir. 1992) (reversing the district court's order granting a new trial on grounds that "the trial court overstepped its bounds and usurped the jury's function of judging credibility"). The re-weighing of the credibility of testimony is not the function of the Court, and the Court declines to find that Chief Mosier was so lacking in credibility as a witness that a new trial is warranted. *See id.*, 971 F.2d at 875 ("[The jurors] were free to settle upon which witness they believed.").

Furthermore, in support of plaintiff's motion to set aside the verdict on plaintiff's claim of hostile work environment, plaintiff recognizes that, in the context of racial discrimination, under which the same standard is applied, "[a] plaintiff does not make a showing of pervasively hostile work environment 'by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs. Instead, there must be a steady barrage of opprobrious racial comments.'"[2] (Pl.'s Mem. at 6 (quoting *Herrera v. Lufkin Indus.*, 474 F.3d 675, 680 (10th Cir. 2007) (quoting *Chavez v. New Mexico*, 397 F.3d 826, 831 (10th Cir. 2005)). "A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "As a general rule, incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive. . . . Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374 (internal quotations and citations omitted). Thus, the jury reasonably could have found plaintiff's testimony credible as to one or several of the described incidents, but based upon those incidents, concluded that the alleged conduct was not sufficiently severe to create a hostile work environment. In any event, it is not this Court's duty to speculate as to which portions of plaintiff's testimony and which portions of Chief Mosier's

---

[2] Plaintiff's memorandum states that the first basis for plaintiff's motion is that "[p]laintiff's evidence in particular as to her hostile work environment based upon gender, was overwhelming and was unrebutted by credible evidence." (Pl.'s Mem. at 4.) Thus, it appears plaintiff is moving on the grounds that the verdict was against the weight of the evidence solely as to her hostile work environment claim only. However, to the extent plaintiff argues that the verdict was against the weight of the evidence as to plaintiff's retaliation and constructive discharge claims, the motion is likewise denied, for the same reasons stated *supra*.

3

testimony were credited by the jury. In addition, to the extent that plaintiff argues that defendant could have called certain other witnesses, plaintiff appears to overlook the fact that the burden of proof is on the plaintiff. In sum, having carefully considered plaintiff's arguments in light of the trial record, the Court concludes that the jury's verdict was not against the weight of the evidence and a new trial is not warranted on this ground. The Court does not conclude that the jury returned a seriously erroneous result or that the verdict is a miscarriage of justice.

B. Defense Counsel's Closing Statement

Plaintiff also asserts that "[c]ounsel's conduct during his closing argument tainted the jury with improper innuendo and improper remarks totally outside the scope of any evidence within the trial," including "new allegations that a conspiracy existed, which Plaintiff's counsel and a witness, Chief Thomas Haring were part of, to fabricate claims solely to get money from the jury." (Pl.'s Mem. at 4-5.) "[A] party seeking a new trial on the basis of opposing counsel's improper statements to the jury faces a heavy burden, as 'rarely will an attorney's conduct so infect a trial with undue prejudice or passion as to require reversal.'" *Marcic v. Reinauer Transp. Cos*., 397 F.3d 120, 124 (2d Cir. 2005) (quoting *Reilly v. Natwest Markets Group, Inc.*, 181 F.3d 253, 271 (2d Cir. 1999)). Furthermore, "'[a] district court is entitled to give attorneys wide latitude in formulating their arguments.'" *Marcic*, 397 F.3d at 126 (quoting *Reilly*, 181 F.3d at 271). More specifically, the Second Circuit has instructed that

> Trial courts possess broad discretion to determine when the conduct of counsel is so improper as to warrant a new trial. Not every improper or poorly supported remark made in summation irreparably taints the proceedings; only if counsel's conduct created undue prejudice or passion which played upon the sympathy of the jury, should a new trial be granted.

*Matthews v. CTI Container Trans. Int'l, Inc.*, 871 F.2d 270, 278 (2d Cir. 1989) (finding that "counsel's reference to [defendant's] ability to pay the judgment; remarks concerning defendants and defendants' counsel; inflammatory remarks including a statement that defense experts were 'bought and paid for'; and an oblique reference to the amount of damages in contravention of a court admonition not to mention amounts. . . [did] not . . . 'irreparably taint[]' [the] proceeding").

Upon the instant motion, plaintiff does not cite to specific portions or statements made in defense counsel's summation, nor does plaintiff accuse defense counsel of referring to facts not in evidence; rather, plaintiff appears to object to defendant's theory of the case in its entirety as presented to the jury during closing arguments. In other words, plaintiff asserts that defense counsel's references in his closing argument to money and to an alleged conspiracy to defraud the City improperly deterred the jury from finding for the City. Plaintiff argues that her counsel objected to defense counsel's inquiry into plaintiff's comments to her therapist and that, because those objections were overruled, the door was opened to defense counsel to introduce the theory regarding the alleged scheme.[3] (Pl.'s

---

[3] To the extent plaintiff objects to opposing counsel's use of the therapist's notes during the trial, it was *counsel for plaintiff* who introduced those notes into evidence, not the defendant. (*See* TT. at 492.) Similarly, although counsel for

4

Mem. at 18.) Plaintiff also asserts that a new trial is warranted in light of "counsel's many remarks in opening as well as closing that this conspiracy spear headed by the Plaintiff was solely to draw money from the jury and put it in the Plaintiff's pocket." (Pl.'s Mem. at 18-19.)

As a threshold matter, plaintiff objected only once during defense counsel's summation. Specifically, plaintiff objected when defense counsel began a discussion of the therapist's notes (which were introduced into evidence by plaintiff's counsel), after counsel had suggested to the jury that an alleged conspiracy existed between plaintiff and Chief Haring to remove Chief Mosier. (TT. at 911- 12.)[4] The Court overruled the objection but gave the following instruction: "I'll just remind the jury that statements of the lawyers during closing statements are argument. Your recollection of the evidence controls." (*Id.*)

In any event, during defense counsel's summation, he specifically referred to and quoted from various portions of the testimony and exhibits. To the extent defense counsel suggested that plaintiff and plaintiff's witnesses were lying and argued that inferences of a conspiracy could be drawn from the evidence, those statements "were not statements of the evidence at all, but were rather argument calling on the jury to draw inferences from the evidence," which is permissible. *Marcic*, 397 F.3d at 126. To the extent plaintiff now suggests that references to plaintiff being motivated by money were improper, and thus warrant a new trial, the Court also disagrees, as mentions of a financial incentive are not improper. *See Marcic*, 397 F.3d at 125 ("A claim for money damages does create a financial incentive to be untruthful, and it was not improper for

---

plaintiff now claims that he timely objected to questions regarding a certain portion of Benson's notes on attorney-client privilege grounds and was overruled, that is simply incorrect. As an initial matter, when plaintiff was questioned about putting in for her retirement papers upon the advice of her attorney, no objection was made. (*See id.*, at 338-39.) When a follow-up question was later asked, a privilege objection was made. (*Id.*, at 340.) Because some testimony had already come in without objection, the Court allowed one additional question and told counsel for plaintiff that the Court would entertain a motion to strike if counsel was able to persuade the Court that the privilege objection was not waived. Subsequently, however, when told to put a motion to strike in writing to explain why any privilege was not waived, counsel for plaintiff withdrew his request to file a such a motion. (*Id.*, at 369.) In any event, to the extent plaintiff is also arguing that plaintiff is entitled to a new trial based upon the Court's alleged improper admission of certain evidence, that alleged basis for a new trial is also denied. The Federal Rules provide:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Fed. R. Civ. P. 61. Plaintiff has failed to meet this standard.

---

[4] References to "TT." are to the trial transcript in this case.

5

opposing counsel to invoke this incentive in an attempt to impeach plaintiff.").

In general, "[a] summation should be considered in its entirety 'within the context of the court's rulings on objections, the jury, and any corrective measures applied by the trial court.'" *Martin v. Moscowitz*, 448 F. Supp. 2d 374, 379 (N.D.N.Y. 2006) (quoting *Parrish v. Sollecito*, 280 F. Supp. 2d 145, 168 (S.D.N.Y. 2003)). Thus, in assessing the relative impact of any improper conduct by counsel,

> "[A] court must examine, on a case-by-case basis, the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself."

*Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 472 (S.D.N.Y. 2003) (quoting *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988)). As noted above, the Court concludes that counsel for defendant did *not* engage in any improper conduct during the trial or make any improper arguments to the jury. In any event, the Court finds that, given the circumstances as a whole, even assuming *arguendo* that the attorney's conduct at trial was improper, the conduct did not infect the trial with undue prejudice. *See Marcic*, 397 F.3d at 125 ("In the context of the entire trial, and given the evidentiary support for the jury's verdict, the probative value of these questions, even if improper, was not so outweighed by any potential prejudice as to entitle [plaintiff] to a new trial.").

At the beginning of the trial, the jury was instructed that "statements, arguments, and questions by the lawyers are not evidence." (Tr T. at 58.) Again, at the conclusion of the trial, the jury was instructed that "argument or statements by lawyers are not evidence because the lawyers are not witnesses. In this regard, what they said to you in their opening statements and in their explanations is intended to help you understand the evidence to reach your verdict. If your recollection of the facts differs from the lawyer's statements, however, it is your recollection that controls." (TT. at 950.) Thus, even if defense counsel's remarks were improper, the Court finds that any potential prejudice was cured by the jury instructions.

C. The Jury Charge

Plaintiff alleges that the jury charge was "misunderstood and not fully comprehended by [the] jury." (Pl.'s Mem. at 20.) In support of this argument, plaintiff alleges that "[e]vidence of this is the fact that the jury asked for the charge during deliberations but did not ask for any clarification of the wording or the substance." (*Id*.) As an initial matter, plaintiff did not timely object to the jury charge as confusing at the initial charge conference or after the instruction was given to the jury, prior to the jury's deliberation, pursuant to Rule 51.[5] *Jarvis v. Ford Motor*

---

[5] Fed. R. Civ. P. 51(c) provides:

> (1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.
> (2) An objection is timely if:
>   (A) a party that has been informed of an instruction or action on a request before

6

*Co.*, 283 F.3d 33, 57 (2d Cir. 2002) ("'[F]ailure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection. . . . Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions.'") (quoting *Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir. 1992), and citing *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 349 (2d Cir. 1999) (applying Rule 51 to an objection to an instruction provided on the jury form), and *Play Time, Inc. v. LDDS Metromedia Commc'ns, Inc.*, 123 F.3d 23, 29 n.6 (1st Cir. 1997) ("The Rule 51 standard applies to the jury charge and any special verdict form.")). Thus, because plaintiff failed to object before the jury retired to deliberate, plaintiff's objection to the charge "should be entertained only if the alleged errors are 'fundamental.'" *Shade v. Hous. Auth. of the City of New Haven*, 251 F.3d 307, 312 (2d Cir. 2001) (citing *Frederic P. Wiedersum Assoc. v. Nat'l Home Constr. Corp.*, 540 F.2d 62, 66 (2d Cir. 1976)); *see* Fed. R. Civ. P. 51(d). "An error is fundamental under this standard only if it is 'so serious and flagrant that it goes to the very integrity of the trial.'" *Shade*, 251 F.3d at 313 (quoting *Modave v. Long Island Jewish Med. Ctr.*, 501 F.2d 1065, 1072 (2d Cir. 1974)). Plaintiff's current objection to the charge does not meet this standard. Plaintiff does not assert that there was any legal error in the court's instruction that led to the alleged confusion; rather, plaintiff merely asserts that the charge was complex and misunderstood. However, plaintiff's purported evidence for this claim is an insufficient basis on which to find that the charge was misunderstood. Specifically, it is remarkable to this Court that, even though plaintiff's counsel did not object to the charge as complex or hard to understand and the jury asked no questions during their deliberations about the charge, plaintiff's counsel nevertheless urges that the Court is somehow to conclude, simply from the lack of any questions from the jury during deliberations, that they misunderstood the law. The more reasonable inference drawn from a lack of questions from the jury is that the jury *did* comprehend the instructions and was not confused. Therefore, plaintiff cannot claim that a fundamental error occurred, and plaintiff cites no cases in support of its position that the "complex nature" of the charge was plain error, much less fundamental error. Thus, the Court declines to set aside the verdict and order a new trial on such grounds.

---

    the jury is instructed and before final jury arguments, as provided by Rule 51(b)(1), objects at the opportunity for objection required by Rule 51(b)(2); or

    (B) a party that has not been informed of an instruction or action on a request before the time for objection provided under Rule 51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

Fed. R. Civ. P. 51(c).

7

## II. CONCLUSION

For the reasons discussed above, the Court concludes that, under the applicable Rule 59 standard, plaintiff has failed to set forth any grounds that warrant the setting aside of the verdict and a new trial. Accordingly, plaintiff's motion pursuant to Rule 59 is denied.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 29, 2007
Central Islip, New York

\* \* \*

The attorney for plaintiff is Thomas F. Bello, Esq., Thomas F. Bello, Esq. P.C., 2 Greene Street, Staten Island, New York 10310. The attorney for defendant is Michael A. Cardozo, Corporation Counsel of the City of New York, by James M. Lemonedes, Esq., Assistant Corporation Counsel, 100 Church Street, New York, New York 10007.